576 A.2d 872

JOYCE CARR, PLAINTIFF–APPELLANT, v. H. THOMAS CARR, DEFENDANT–RESPONDENT.

Argued March 12, 1990—Decided July 24, 1990.

338

*John A. Craner* argued the cause for appellant (*Craner, Nelson, Satkin & Scheer,* attorneys; *John A. Craner* and *Libby E. Sachar,* of counsel; *John A. Craner* and *Norman W. Albert,* on the brief).

*Warren W. Wilentz* argued the cause for respondent (*Wilentz, Goldman & Spitzer,* attorneys; *Noel S. Tonneman,* on the briefs).

A letter brief was submitted on behalf of *amicus curiae* New Jersey State Bar Association (*Gerald M. Eisenstat,* President, *Danielle E. Reid,* Chair, Women's Rights Section, and *James P. Yudes,* Chair, Family Law Section, attorneys; *Danielle E. Reid* and *Susan L. Goldring,* on the brief).

A letter joining in the letter brief of *amicus curiae* New Jersey State Bar Association was submitted on behalf of *amicus curiae* New Jersey Women Lawyers Association (*Jan L. Bernstein,* Vice–President, and *Joyce A. Howell,* Vice–President, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In this case, a wife brought an action for divorce against her husband. Her husband's death before trial effectively termi-

nated the divorce action. The issue arising from the death of the husband during the pendency of the divorce action is whether the wife is entitled either to statutory equitable distribution of the marital assets under the divorce laws or to a statutory elective share of her deceased husband's estate under the probate code. The courts below concluded that neither statutory scheme provided the surviving wife with an enforceable interest against marital assets legally held by the husband. The wife's plight, likened to a "black hole," gives rise to the ultimate issue: whether, in this situation, the surviving wife is entitled to any relief at all.

## I.

Joyce and Thomas Carr were married on December 9, 1966. Thomas Carr owned and operated an engineering firm; Joyce Carr was a housewife. The Carrs did not have any children although Mr. Carr had children from a prior marriage. In June of 1983, after seventeen years of marriage, Mr. Carr left Mrs. Carr. On July 29, 1984, Mrs. Carr filed a complaint for divorce on the grounds of desertion, *N.J.S.A.* 2A:34-2(b), and sought alimony, equitable distribution of their marital assets, *N.J.S.A.* 2A:34-23, and counsel fees. She also filed a complaint for divorce from bed and board. *N.J.S.A.* 2A:34-3. Mrs. Carr was subsequently awarded *pendente lite* support of $125.00 per week plus medical, insurance, car, and household expenses.

Substitutions of defense counsel and extended discovery prolonged the divorce proceeding. Trial was set eventually for August 19, 1987. On that day, however, defendant did not appear, and his attorney moved to adjourn the trial due to his client's hospitalization and illness. Five days later, Mr. Carr died. He left his entire estate to his children.

After Thomas Carr's death, Joyce Carr filed an order to show cause to substitute the executor of defendant's estate as a defendant, to restrain the disposition of the decedent's estate, to continue *pendente lite* support payments, and requested a

hearing to resolve the issues of alimony, equitable distribution, and fees.

The Chancery Division, Family Part, held that the divorce action and claims for alimony and equitable distribution were terminated by Mr. Carr's death, and discontinued Mrs. Carr's *pendente lite* support. The court, however, viewed the action as essentially one of equity and allowed the plaintiff to amend her complaint to pursue alternate equitable remedies "to prevent a failure of justice." It denied defendant's motion to dismiss the plaintiff's actions, enjoined the executor from distributing the assets of the estate to its beneficiaries, and granted plaintiff's motion for attorneys' fees.

Plaintiff then filed an amended complaint seeking distribution of the marital assets based on equitable grounds. She also appealed the trial court's dismissal of the alimony and equitable distribution claims. The Appellate Division, in a reported decision, unanimously affirmed the trial court's opinion. *Carr v. Carr*, 229 *N.J.Super.* 370, 551 *A*.2d 989 (App.Div.1988). The appellate court held that the trial court correctly construed the equitable distribution and elective share statutes to preclude statutory relief in these circumstances but that equitable relief was available to plaintiff. *Id.* at 374, 551 *A*.2d 989. We granted defendant's petition for certification. 114 *N.J.* 520, 555 *A*.2d 632 (1989).

## II.

In this case, plaintiff's initial recourse was to the equitable distribution statute, *N.J.S.A.* 2A:34–23, since she had brought an action for divorce that specifically included a claim for equitable distribution. The equitable distribution statute provides:

> In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of property, both real and personal, which was legally or beneficially acquired by them or either of them during the marriage. [*N.J.S.A.* 2A:34–23.]

■ The courts below, correctly in our view, concluded that the equitable distribution statute does not authorize the distribution of marital assets except upon the divorce of the parties. 229 *N.J.Super.* at 372–73, 551 *A.*2d 989. By the plain terms of the statute, a spouse's right to share in marital property by virtue of equitable distribution arises when "a judgment of divorce ∴ is entered." The Court has consistently interpreted the statute to authorize a distribution of marital assets only on the condition that the marriage of the parties has been terminated by divorce. *Painter v. Painter*, 65 *N.J.* 196, 216 n. 5, 320 *A.*2d 484 (1974); *Rothman v. Rothman*, 65 *N.J.* 219, 228, 320 *A.*2d 496 (1974); *see Grange v. Grange*, 160 *N.J.Super.* 153, 158–59, 388 *A.*2d 1335 (App.Div.1978).

■ The current controversy arises because the marriage between the Carrs was terminated not by divorce, but by Mr. Carr's death. Divorce proceedings abate with the death of one of the parties. *Castonguay v. Castonguay*, 166 *N.J.Super.* 546, 400 *A.*2d 130 (App.Div.1979); *Jacobson v. Jacobson*, 146 *N.J.Super.* 491, 370 *A.*2d 65 (Ch.Div.1976); *Dunham v. Dunham*, 82 *N.J.Eq.* 395, 89 *A.* 281 (E. & A.1913). The lower courts held, and the plaintiff concedes, that the death of either party to a divorce terminates the cause of action as to the "status of the marriage relationship" between the parties. Thus, with the death of her husband, a judgment of divorce was no longer attainable by Mrs. Carr and, derivatively, equitable distribution under the statute also became unattainable.

Some New Jersey courts have recognized that in highly unusual circumstances some aspects of statutory equitable distribution and related forms of relief may precede a divorce judgment or survive a spouse's death before divorce. *See, e.g., Graf v. Graf,* 208 *N.J.Super.* 240, 505 *A.*2d 207 (Ch.Div.1985) (prior to a judgment of divorce, court has authority to order sale of personalty when necessary to ensure maintenance and support of wife and children); *Fulton v. Fulton,* 204 *N.J.Super.* 544, 499 *A.*2d 542 (Ch.Div.1985) (after death of husband,

court allowed entry of final judgment of divorce based on previously-taken testimony); *Samuelson v. Samuelson,* 198 *N.J.Super.* 390, 487 *A.*2d 342 (Ch.Div.1984) (prior to a judgment of divorce, court allowed distribution of interest income of marital property held in escrow account); *Witt v. Witt,* 165 *N.J.Super.* 463, 398 *A.*2d 597 (Ch.Div.1979) (prior to a judgment of divorce, court allowed sale of marital home when both spouses consented); *Jacobson v. Jacobson, supra,* 146 *N.J.Super.* 491, 370 *A.*2d 65 (husband who murders wife during pendency of divorce action may not object to equitable distribution); *Olen v. Melia,* 141 *N.J.Super.* 111, 357 *A.*2d 310 (App. Div.) (final judgment of divorce entered after one party had died prior to the entry of the final order and where trial court had already issued an oral opinion and entered a judgment), *certif. denied,* 71 *N.J.* 518, 366 *A.*2d 673 (1976); *Olen v. Olen,* 124 *N.J.Super.* 373, 307 *A.*2d 121 (App.Div.) (same), *certif. denied,* 63 *N.J.* 570, 310 *A.*2d 484 (1973). The circumstances exemplified by these cases do not undermine the rule that, ordinarily, equitable distribution of marital assets arises only with the adjudication of divorce.[1] This case, not surrounded by any of the circumstances that make a surviving spouse's claim unusual or exceptional, is governed by the general rule: statutory equitable distribution is conditioned on the termination of marriage by divorce.

---

[1] In 1981, the Supreme Court Committee on Matrimonial Litigation issued a final report after a two-phase inquiry. Supreme Court Committee on Matrimonial Litigation, Phase Two, Final Report (1981) 81 *N.J.L.J.Supp.* at 1 (July 16, 1981). The Committee recommended:

In exceptional cases, a trial court should be permitted to order the sale of any marital asset and impose protective orders to preserve the cash proceeds. The trial court should also have the discretionary power to permit a party to utilize a portion of the proceeds when

a. there are no other assets subject to equitable distribution;
b. a spouse has removed other assets subject to equitable distribution;
c. bona fide efforts to locate a spouse are unsuccessful;
d. basic living expenses cannot be paid in any other way;
e. · for other good and emergent cause. [*Ibid.*]

■ The courts below also concluded that the elective-share provision of the probate code, *N.J.S.A.* 3B:8–1, did not afford relief to plaintiff. 229 *N.J.Super.* at 372–73, 551 *A.*2d 989. We agree.

In 1981, the Legislature adopted a modified version of the Uniform Probate Code (U.L.A.) §§ 1–101 to 8–102 (West 1983) governing the estates of intestate decedents. *L.*1981, *c.* 405; *N.J.S.A.* 3B:1–1 to 3B:29–1 ("code"). The new code included a major revision of the antecedent common-law right of dower. It provided a surviving spouse with an "elective share" or forced share of the estate in the event the spouse is "disinherited." *N.J.S.A.* 3B:8–1. The elective-share provision in part specifies:

> If a married person dies domiciled in this State, on or after May 28, 1980, the surviving spouse has a right of election to take an elective share of one-third of the augmented estate under the limitations and conditions hereinafter stated.... [*Ibid.*]

Under certain circumstances, a surviving spouse is not entitled to an elective-share. *N.J.S.A.* 3B:8–1 explicitly excludes a surviving spouse if (1) at the time of death decedent and surviving spouse are living separate and apart in separate habitations; or (2) decedent and surviving spouse had ceased to cohabit as man and wife, either as the result of (a) a judgment of divorce from bed and board; or (b) circumstances that would give rise to a cause of action for divorce or nullity of the marriage in New Jersey. See Finnerty, "Equitable Distribution, The Elective Share and Death: The Black Hole," VI *N.J.Fam.L.* 177, 188–89 (May 1987). Thus, the elective-share statute prevents a spouse, if divorced, from claiming the right to share in decedent's estate, and also prevents a spouse from such an entitlement if the parties no longer live together. *Matter of Estate of Hersh*, 195 *N.J.Super.* 74, 77–78, 477 *A.*2d 1286 (App. Div.), *certif. denied*, 99 *N.J.* 185, 491 *A.*2d 689 (1984); *cf. McKay v. Estate of McKay*, 205 *N.J.Super.* 609, 621, 501 *A.*2d 610 (Law Div.1985) (evidence, beyond mere separation, of a cause of action for divorce was required to disqualify

surviving spouses from elective share rights of surviving spouse).

Moreover, it does not appear that the conditions restricting the class of persons entitled to the statutory elective share were enacted through legislative inadvertence or clearly lead to absurd, as opposed to harsh, results. These considerations, if applicable, might impel a court to impute to a statute a meaning that will effectuate an evident legislative intent or accomplish a sensible result. *In re Executive Comm'n on Ethical Stand. re: Appearance of Rutgers Attorneys,* 116 *N.J.* 216, 227, 561 *A.*2d 542 (1989); *New Jersey Builders, Owners and Managers Ass'n v. Blair,* 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972). With respect to whether these factors are applicable, legislative history is instructive. *State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 101, 557 *A.*2d 277 (1989); *New Jersey Pharmaceutical Assoc. v. Furman,* 33 *N.J.* 121, 130, 162 *A.*2d 839 (1960).

Under an early draft of the elective-share statute, disentitlement would only occur if the parties had been living separate and apart in different habitations and had obtained a judgment of divorce, or ceased to cohabit as married under circumstances which would have given rise to a cause of action for divorce. This version was more similar than the enacted statute to the approach of the Uniform Probate Code, *U.P.C.* § 2–201(a), under which only a judgment of divorce will result in disqualification for an elective share. Statement to A. 18 (1979). A committee changed the early draft's "and" to an "or." Senate Jud. Comm'n, Statement to A. 18 (Nov. 19, 1979). Hence, as enacted, a separation without a judgment of divorce or cause of action for divorce can remove a spouse from the class of persons entitled to an elective share.

We thus concur in the reasoning and conclusions of the lower courts. The wife's entitlement to equitable distribution under *N.J.S.A.* 2A:34–23 abated with the termination of the divorce action on her husband's death; and the wife, having separated from her husband and embarked on a divorce action with good

cause prior to her husband's death, is not entitled to an elective share of his estate under *N.J.S.A.* 3B:8–1.

### III.

The ultimate issue is whether judicial relief can be afforded a surviving wife who, at the time of her husband's death, is not statutorily entitled either to equitable distribution because she had not yet obtained a divorce or to an elective share because she was then obtaining a divorce. If she is not entitled to relief under either statute, a plight created by her husband's supervenient death, we must determine whether the dual statutory schemes express a design to deny any relief at all.[2]

The purpose of statutory equitable distribution "is to divide fairly assets acquired when both parties contributed to the marital enterprise, whether by earned income or as a homemaker." *Portner v. Portner,* 186 *N.J.Super.* 410, 415, 453 *A.*2d 189 (App.Div.1982), *rev'd on other grounds,* 93 *N.J.* 215, 460 *A.*2d 115 (1983). "[T]he division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." *Rothman v. Rothman, supra,* 65 *N.J.* at 229, 320 *A.*2d 496. See Freed and Foster, "Economic Effects of Divorce," 7 *Family Law Quart.* 275 (1973). The equitable distribution statute recognizes the significance of the mutual contributions of each spouse to the marital enterprise. As the Court explained in *Chalmers v. Chalmers,* 65 *N.J.* 186, 194, 320 *A.*2d 478 (1974):

[T]he statutory provision for equitable distribution of property is merely the recognition that each spouse contributes something to the establishment of the

---

[2]Stretching a metaphor, the parties and commentators characterize the surviving wife's plight in this setting as a "black hole." This term has come into common parlance and is derived from the astrophysical expression that describes an area of the universe created by collapsing stars, giving the appearance of a "black hole," in which the pull of gravity is irresistible and irreversible. The term is of recent origin. It was coined in 1969 by the American scientist, John Wheeler. Hawking, *A Brief History of Time* (Bantam: 1988) at 81.

marital estate even though one or the other may actually acquire the particular property. Therefore, when the parties become divorced, each spouse should receive his or her fair share of what has been accumulated during the marriage. The concept of fault is not relevant to such distribution since all that is being effected is the allocation to each party of what really belongs to him or her.

Statutory equitable distribution is based on the philosophy that marriage is a joint enterprise in which the interest in and entitlement to its underlying property is also joint and mutual. The entitlement to marital property is not dependent on economic contributions as such. Less tangible efforts are recognized as equally valuable to the overall prosperity of the familial entity. Judge Pressler, for the Appellate Division, described that concept in *Gibbons v. Gibbons*, 174 *N.J.Super.* 107, 112–13, 415 *A.*2d 1174 (1980), *rev'd on other grounds*, 86 *N.J.* 515, 432 *A.*2d 80 (1981):

As we understand the concept of equitable distribution, it is a corollary of the principal concept that marriage is a joint enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition. Thus, the extent to which each of the parties contributes to the marriage is not measurable only by the amount of money contributed to it during the period of its endurance but rather by the whole complex of financial and nonfinancial components contributed. The function of equitable distribution is to recognize that when the marriage ends, each of the spouses, based on the totality of the contribution made to it, has a stake in and right to a share of the family assets accumulated while it endured, not because that share is needed but because those assets represent the capital product of what was essentially a partnership entity.

Indeed, "[o]nly if it is clearly understood that far more than economic factors are involved, will the resulting distribution be equitable within the true intent and meaning of the statute." *Rothman v. Rothman, supra,* 65 *N.J.* at 229, 320 *A.*2d 496.

The distinctive interest vindicated by equitable distribution is highlighted by contrasting it with alimony, which "is awarded to defray the expenses of supporting a spouse *post* divorce, whereas, fundamentally, equitable distribution is awarded for recognized contributions that each spouse has made toward the

accumulation of property during the time span of the viable coverture." *Mendell v. Mendell,* 162 *N.J.Super.* 469, 475–76, 393 *A.*2d 600 (1978) (citation omitted). As stated by the Court in *Chalmers v. Chalmers, supra,* 65 *N.J.* at 194, 320 *A.*2d 478, equitable distribution secures for the spouse "what really belongs to him or her."

The judiciary has been responsible for defining, explaining, and applying the doctrine of equitable distribution. When the Divorce Reform Act, *L.*1971, *c.* 212; *N.J.S.A.* 2A:34–1 to –52, was enacted, the equitable distribution provision, *L.*1971, *c.* 212 § 8; *N.J.S.A.* 2A:34–23, was inserted during passage with virtually no discussion or antecedent history. *See Brandenburg v. Brandenburg,* 83 *N.J.* 198, 204, 416 *A.*2d 327 (1980). Much later, in 1988, after several years of judicial experience with the equitable distribution statute, the Legislature enacted *N.J.S.A.* 2A:34–23.1, which provides in part that

[i]n making an equitable distribution of property, the court shall consider ...

\*       \*       \*       \*       \*       \*       \*       \*

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount of value of the marital property, as well as the contribution of a party as a homemaker....

It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of property while the party was married.

Thus, the legislature in effect reconfirmed the judicial perception and articulation of the equitable principles that undergird the statutory entitlement to equitable distribution of marital assets.

We can thus discover in our matrimonial laws a confluence of legislative and judicial understanding, embodying a clear and strong public policy with respect to the cognizable rights of spouses in marital property. These rights arise from the marital relationship in which, presumptively, both parties contribute in varied ways to the creation, acquisition and preservation of

their familial property and, thereby, secure a protectable interest to share, possess, and enjoy that property.

The underlying philosophy of the probate code, as it may address a married couple who had become estranged, is no less grounded in legislatively-sensed equities. The code recognizes that both the needs and the rights of a surviving spouse justify a forced or elective share against the decedent's estate. The history of the current elective share provision of the Code discloses a legislative recognition that the existing law allowed spouses to deplete their respective estates during their lifetimes by gift, or at death by other means, effectively resulting in a complete disinheritance of the surviving spouse. A clear purpose of the new code was to eliminate this unfairness. *See, e.g.,* Assembly Jud., Law, Pub. Safety and Defense Comm'n, Statement to A. 28 (Feb. 23, 1978); Senate Jud. Comm'n, Statement to A. 18 (Nov. 19, 1979). However, some perceive that a public policy behind the elective-share provision implicitly acknowledges that "the contributions, whether financial or not, of a surviving spouse during marriage" justify resort to marital assets. *See* Reid, "Post–Mortem Divorce: Should a Spouse's Statutory Inheritance Rights Depend on Divorce Standards?", 5 *Seton Hall Legis.J.* 185, 186 (1982). This policy is consistent with the principle that in marriage each spouse contributes to and creates marital assets and thereby has an entitlement in such property that is protectable when the marriage ends.

We conclude, therefore, that the principle that animates both statutes is that a spouse may acquire an interest in marital property by virtue of the mutuality of efforts during marriage that contribute to the creation, acquisition, and preservation of such property. This principle, primarily equitable in nature, is derived from notions of fairness, common decency, and good faith. Further, we are convinced that these laws do not reflect a legislative intent to extinguish the property entitlements of a spouse who finds himself or herself beyond the reach of either statute because the marriage has realistically but not legally

ended at the time of the other's death.[3]

In the exercise of their common-law jurisdiction, courts should seek to effectuate sound public policy and mold the law to embody the societal values that are exemplified by such public policy. *See, e.g., Collopy v. Newark Eye & Ear Infirmary,* 27 *N.J.* 29, 141 *A.*2d 276 (1958). In this process, courts should be responsive to legislation as expressive of public policy, which can serve to shape and add content to the common law, even though such legislative expressions may not be directly applicable or binding in the given matter. *E.g., Haynes v. First Nat'l State Bank of New Jersey,* 87 *N.J.* 163, 188–89, 432 *A.*2d 890 (1981). Accordingly, we hold that marital property does not lose its essential and distinctive nature as property arising from the joint contributions of both spouses during marriage because of the death of one spouse during the pendency of divorce proceedings.

## IV.

The trial court determined that plaintiff's peculiar status, for which statutory relief is unavailable, should be remedied

---

[3]We are mindful of the recent legislative attempts to clarify this area. On June 27, 1988, the New Jersey Senate passed legislation amending the elective share statute to clarify who is a "surviving spouse." S. 1001, 203rd Legis., 2d Sess. (June 27, 1988). The bill recognized that a marriage's legal status is not severed until a final judgment of divorce is entered, and removed from the elective share statute the forfeiture provision when a surviving spouse living separate and apart has a cause of action for divorce. *Ibid.* A modified joint Senate and Assembly version of the bill, S. 1001(1R) and A–4423, 203 Legis., 2d Sess. (June 15, 1989), provided that a surviving spouse remained entitled to an elective share pre-divorce judgment so long as he or she was not the deserting spouse. *Id.* at 2c(7). That bill also specifically provided that "nothing [herein] shall place a person in the position of being neither a surviving spouse nor a spouse entitled to equitable distribution, alimony, maintenance, or child support in accordance with the person's rights under the law of divorce and annulment." *Id.* at 2(d). That proposed amendment, reintroduced in S.2170, 204 Legis., 1st Sess. (Jan. 9, 1990), confirms only that the Legislature had not, by its current enactments, explicitly considered or addressed the gap created by these statutes.

through judicial exercise of its inherent equitable jurisdiction and invocation of "general equitable remedies." "Equities arise and stem from facts which call for relief from the strict legal effects of given situations." *Untermann v. Untermann,* 19 *N.J.* 507, 518, 117 *A.*2d 599 (1955). The Legislature has recognized that courts' equitable powers are particularly appropriate in the context of domestic relations. *See, e.g. N.J.S.A.* 2A:34–1(f) (court may nullify marriage "under the general equity jurisdiction of the Superior Court."); *N.J.S.A.* 2A:34–8 (jurisdiction over divorce extends to "afford[ing] incidental relief as in other cases of an equitable nature ...."); *N.J.S.A.* 2A:34–23 (pending judgment in matrimonial action, court may order such *pendente lite* relief "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just," and, upon failure of compliance, may attach property as necessary or enforce such orders "by other ways according to the practice of the court;" alimony may be awarded to the extent "fit, reasonable and just"). Courts have ordered the sequestering of any profits of real estate pending divorce proceedings, *Grange v. Grange, supra,* 160 *N.J.Super.* 153, 388 *A.*2d 1335, and have invoked equitable remedies, for example, to apportion premarital assets. *Rolle v. Rolle,* 219 *N.J.Super.* 528, 535–36, 530 *A.*2d 847 (Ch.Div.1987); *Coney v. Coney,* 207 *N.J.Super.* 63, 74–76, 503 *A.*2d 912 (Ch.Div.1985).

■■ The constructive trust, we believe, is an appropriate equitable remedy in this type of case. Justice Cardozo described "[a] constructive trust [as] the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 *N.Y.* 380, 386, 122 *N.E.* 378, 380 (1919).

Constructive trusts are invoked to prevent unjust enrichment or fraud. *D'Ippolito v. Castoro,* 51 *N.J.* 584, 242 *A.*2d 617 (1968); *Hill v. Warner, Berman & Spitz,* 197 *N.J.Super.* 152,

484 *A*.2d 344 (App.Div.1984). A constructive trust should "be impressed in any case where to fail to do so will result in an unjust enrichment." *D'Ippolito v. Castoro, supra,* 51 *N.J.* at 588, 242 *A*.2d 617. It should be imposed although the acquisition of the property was not wrongful. *Stewart v. Harris Structural Steel Co.,* 198 *N.J.Super.* 255, 486 *A*.2d 1265 (App. Div.1985).

It has been recognized that "the general principles with reference to unjust enrichment which are at the basis of constructive trusts ... are also at the basis of quasi-contractual obligations." 5 *Scott on Trusts* (3d ed.) § 461 at 3410. Quasi-contractual obligations are "imposed by law for the purpose of bringing about justice without reference to the intent of the parties." *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co.,* 32 *N.J.* 17, 22, 158 *A*.2d 825 (1960). As with constructive trusts, theories of quasi-contract and quantum meruit are not based on the actual intent of the parties, but "are arbitrarily imposed by the court to prevent an unjust enrichment." *Coney v. Coney, supra,* 207 *N.J.Super.* at 75, 503 *A*.2d 912. Such remedies have been invoked in the analogous context of unmarried cohabitants who may acquire rights as a result of enduring, intimate personal relationships founded on mutual trust, dependence, and raised expectations. *E.g., Crowe v. DeGoia,* 90 *N.J.* 126, 447 *A*.2d 173 (1982). In such cases, courts may presume that the parties "intended to deal fairly with one another [and will] employ the doctrine of *quantum meruit,* or equitable remedies such as constructive or resulting trusts" in order to ensure that one party has not been unjustly enriched, and the other unjustly impoverished, on account of their dealings. *Kozlowski v. Kozlowski,* 80 *N.J.* 378, 390–91, 403 *A*.2d 902 (Pashman, J., concurring).

In *Coney v. Coney, supra,* mentioning the equitable remedies of constructive trust, *quasi*-contract, and *quantum meruit,* the court stated: "There appears to be no reason why such equitable remedies, which are available to parties who cohabited but did not marry, are not also available to those parties

who ultimately married...." 207 *N.J.Super.* at 75, 503 *A.*2d 912. Extending this reasoning, we find no reason why equitable remedies available to cohabitants who did not marry, and available to cohabitants who ultimately did marry, and, by statute, available to married persons who have divorced, should not also be available to married persons who were in the process of divorcing but did not simply because one died.

We thus determine that Mrs. Carr should be afforded judicial relief. We recognize, however, that in the matrimonial field the Legislature remains free to fashion its own standards for remedial relief. *See, e.g., N.J.S.A.* 2A:34–23.1 (as amended by *L.*1988, *c.* 153, codifying criteria for the equitable distribution of marital assets articulated in *Painter v. Painter, supra,* 65 *N.J.* at 211–12, 320 *A.*2d 484); *ibid.* (pension benefits factored into equitable distribution, as permitted by *Kikkert v. Kikkert,* 177 *N.J.Super.* 471, 427 *A.*2d 76 (App.Div.), *aff'd,* 88 *N.J.* 4, 438 *A.*2d 317 (1981), should not be considered in calculating alimony, *e.g. Innes v. Innes,* 117 *N.J.* 496, 569 *A.*2d 770 (1989)); *ibid.* (codifying judicial concept of rehabilitative alimony, see *Lepis v. Lepis,* 83 *N.J.* 139, 153–56 & n. 9, 416 *A.*2d 45 (1980)); *N.J.S.A.* 2A:34–23 (as amended by *L.*1980, *c.* 181 and *L.*1983, *c.* 519 to exempt property acquired by gift, devise, or intestate succession from equitable distribution, countermanding holdings in cases such as *Mey v. Mey,* 79 *N.J.* 121, 398 *A.*2d 88 (1979)). We are aware that the Legislature is conversant with the need to provide remedial solutions in this setting. See discussion, at 350 n. 3, 576 *A.*2d at 879 n. 3.

We are satisfied that, if warranted by the evidence, the equitable remedy of constructive trust should be invoked and imposed on the marital property under the control of the executor of Mr. Carr's estate. Further, principles of quasi-contract may be used since marital contributions and efforts in the creation and acquisition of marital assets are also relevant. These remedies, upon a sufficient evidentiary showing, should be applied to avoid the unjust enrichment that would occur if

the marital property devolving to Mr. Carr's estate included the share beneficially belonging to Mrs. Carr.

## V.

We affirm the judgment of the Appellate Division and remand the cause to the trial court for proceedings consistent with this opinion.

*For affirmance and remandment* —Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN and Judges BILDER and ARNOLD M. STEIN—7.

*For reversal* —None.