938 A.2d 193 (2008)
397 N.J. Super. 559
In the Matter of the ESTATE OF Robert P. QUARG, Deceased.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 2007.
Decided January 23, 2008.
Thomas W. Williams, Mahwah, for appellant, Barbara Quarg.
Gelman Gelman Wiskow & McCarthy, for respondent, Francine Levy Quarg (Barry A. Cohen, on the brief).
Before Judges LINTNER, SABATINO and ALVAREZ.
The opinion of the court was delivered by
LINTNER, P.J.A.D.
Defendant, Barbara Quarg (Barbara) appeals from a judgment of the Chancery Division, Probate Part, imposing a constructive trust on the surviving spouse's share of the intestate estate of Robert Quarg, in favor of plaintiff, Francine Levy Quarg (Francine). We remand for further proceedings, as modified by us, to determine whether Francine's allegations establish an implied contractual right to the proceeds of Robert's estate, as set forth in In re Estate of Roccamonte, 174 N.J. 381, 808 A.2d 838 (2002).
The following are the undisputed facts presented to the Chancery judge on stipulation by the parties. Barbara and Robert were married on September 29, 1956. On December 24, 1957, Barbara gave birth to twins, Robert and Patricia Quarg. Barbara and Robert lived together until October 1958, when Barbara took the children and left the marital residence. Barbara and Robert never again lived as husband and wife but they never divorced.
The only legal proceedings that took place between them were for visitation and child support, which occurred in New York in 1959-1960. When Robert visited the children, Barbara made herself scarce to avoid having words with him. Robert's visitations with the children ended by 1968. From 1969 to 2004, the only contact Barbara *194 had with Robert was one meeting to discuss an issue regarding their son. They also had three brief unplanned encounters. Barbara visited Robert in hospice nine days before his death.
Francine met Robert in 1961. They began a relationship shortly thereafter and Robert moved in with Francine. On November 13, 1962, a son, Jonathan, was born to the couple. Both Francine and Jonathan took Robert's surname. The couple lived together continuously from 1961 until Robert entered a hospital in 2004, just weeks before his death. During that time period, they bought a home together, which was deeded to them as husband and wife. They also listed themselves as husband and wife on health insurance applications and also in all other respects held themselves out as husband and wife.
Robert died intestate on December 8, 2004. His estate was valued at $345,568.63, of which $226,068.63 was personal property and $119,500 was real property. Letters of Administration were initially granted to Robert's daughter, Patricia. On June 29, 2005, Jonathan and Francine filed a Verified Complaint and Order to Show Cause seeking to establish a legal parent-child relationship between Jonathan and Robert.
In the first count of the complaint, Francine alleged that DNA testing established Jonathan as Robert's son. The second count sought to have Patricia's Letters of Administration set aside for failing to list Jonathan as a surviving son. In the third count, Francine asserted that she and Robert lived as unmarried cohabitants for more than four decades, during which they had formed an "intimate relationship founded on mutual trust, dependence and raised expectations." She sought to share in Robert's estate, claiming that if Barbara is permitted to inherit as surviving spouse, Francine would be "unjustly impoverished" and Barbara "unjustly enriched."
On September 8, 2005, the Chancery judge entered an order revoking Patricia as administrator and appointing a substitute administrator. A consent order was entered on October 25, 2005, establishing a legal parent-child relationship between Robert and Jonathan.
On December 19, 2006, the judge issued her opinion from the bench. She found that the intestacy statutes create a "statutory will . . . case law . . . militate[d] against [Barbara's] entitlement to any interest, either by way of intestacy taking or elective-share." The judge relied, in part, on the decision in Carr v. Carr, 120 N.J. 336, 576 A.2d 872 (1990), for the principle that spouses may acquire an interest in marital property by virtue of their mutual efforts during marriage that contribute to the creation, acquisition, and preservation of such property. She then reasoned that Barbara did not play a role in the joint enterprise with Robert nor did she establish that the assets accumulated were for her benefit. As to Francine, the judge recognized that, while not qualifying as Robert's statutory wife or registered domestic partner, Francine was his "partner, caregiver, builder of dreams and assets," thus entitling her the equitable remedy of a constructive trust establishing her share in Robert's estate.
On appeal, Barbara argues that she is entitled to receive one-half of Robert's estate under the applicable provisions of N.J.S.A. 3B:5-3d, which sets the intestate share of a surviving spouse at one-half if there is surviving issue, one or more of whom are not issue of the surviving spouse. Barbara also argues that N.J.S.A. 3B:8-1 does not apply because the elective share statute protects spouses who are disinherited by will by providing for an elective share. She maintains that the *195 judge erred in fashioning a constructive trust. She asserts that the facts in Carr are not analogous because the plaintiff in Carr, although in the process of obtaining a divorce, was still married to the decedent and seeking equitable distribution at the time of his death. Barbara further argues that the cases that permit unmarried cohabitants to collect equitable distribution deal with the palimony rights between unmarried couples.
We agree with Barbara that the probate statutes do not afford Francine a remedy under the circumstances of this case. However, we part company with her contention that Francine's factual allegations do not warrant judicial intervention. We do so for slightly different reasons than those expressed by the Chancery judge. See Isko v. Plan. Bd. of Livingston Twp., 51 N.J. 162, 175, 238 A.2d 457 (1968). Viewing Francine's allegations together with the circumstances presented we are compelled to remand for further proceedings based upon implied contract.
We begin our analysis with the Court's decision in Kozlowski v. Kozlowski, 80 N.J. 378, 390-91, 403 A.2d 902 (1979). Kozlowski dealt with a non-married plaintiff seeking palimony from the defendant, her male partner. Kozlowski, supra, 80 N.J. at 380, 403 A.2d 902. In Kozlowski, the defendant expressly promised to support his female partner for the rest of her life. However, the Court noted that it is of "no legal consequence" whether the promise is expressed or implied, stating:
The only difference is in the nature of the proof of the agreement. Parties entering this type of relationship usually do not record their understanding in specific legalese. Rather, as here, the terms of their agreement are to be found in their respective versions of the agreement, and their acts and conduct in the light of the subject matter and the surrounding circumstances.
[Id. at 384, 403 A.2d 902.]
In his concurring opinion, Justice Pashman agreed with the majority that a promise to provide for a life partner may be expressed or implied, with intent being discernable from the couple's "conduct and actions interpreted in light of all the surrounding circumstances." Id. at 390, 403 A.2d 902 (Pashman, J., concurring). However, he went one step further, pointing out that in the absence of agreement a court could look to quantum meruit or its equitable remedies, including constructive and resulting trusts, to ensure that one party to a relationship is not unjustly enriched and the other unjustly impoverished. Id. at 390-91, 403 A.2d 902 (Pashman, J., concurring).
In Carr, supra, 120 N.J. at 399-40, 576 A.2d 872, the husband died while the wife's divorce case was pending. The Court fashioned an equitable constructive trust remedy for the wife because her husband's death extinguished her divorce case along with her claim for equitable distribution, and she was not afforded a remedy under the elective share provision of the probate code. Id. at 351, 576 A.2d 872. The Court recognized that the wife's seventeen-year marriage was a joint enterprise, which contributed to the acquisition of marital property that would otherwise entitle her to equitable distribution had her husband not died. Id. at 347-50, 576 A.2d 872. The Court remanded the matter to permit an evidential showing "to avoid . . . unjust enrichment that would occur if the marital property devolving to Mr. Carr's estate included the share beneficially belonging to Mrs. Carr." Id. at 353-54, 576 A.2d 872.
Quoting from Justice Pashman's concurring opinion in Kozlowski, the Carr Court noted that a constructive trust was an *196 appropriate remedy because "courts may presume that the parties `intended to deal fairly with one another [and will] employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts' in order to ensure that one party has not been unjustly enriched, and the other unjustly impoverished, on account of their dealings." Id. at 352, 576 A.2d 872 (quoting Kozlowski, supra, 80 N.J. at 390-91, 403 A.2d 902 (Pashman, J., concurring)).
The circumstances in In re Estate of Roccamonte, 174 N.J. 381, 808 A.2d 838 (2002), are somewhat similar to those before us. In Roccamonte, the plaintiff brought suit against her partner's estate, seeking a lump-sum award for her lifetime. The couple had lived together for more than twenty-five years even though the decedent never divorced his wife. Id. at 386, 808 A.2d 838. The decedent had promised the plaintiff that he would see to it that she was provided for during her life. He died without a will. Id. at 387, 808 A.2d 838.
Applying the same rationale to a probate action as it did in Kozlowski, the Roccamonte Court reaffirmed the principle that where an unmarried adult partner is induced to cohabit in a marital-like relationship by a promise of support, that promise will be enforced by the court whether it is oral or written, implied or express, or inferable from the parties' acts and conduct rather than by what they said. Id. at 389, 808 A.2d 838. Noting the right to support does not come from the relationship, but instead from contract, the court fashioned the same contractual remedy, as it did in Kozlowski, namely, a one-time lump sum in an amount equal to the present value of the reasonable future support the decedent has promised to provide. Id. at 390, 808 A.2d 838.
The Roccamonte Court pointed out that the decedent's concern for the plaintiff's well being was evidenced by his providing for her lavishly for the twenty-five years they were together. Id. at 389, 808 A.2d 838.
In the circumstances and in view of the proofs, it appears highly unlikely that [the decedent] intended to leave [plaintiff] to an impoverished old age. . . . The promise, clearly implied, if not express[ed], that he would see to it that she was adequately provided for during her lifetime . . . seems to us to [be] . . . the corollary for and the condition of their relationship. . . .
[Id. at 395, 808 A.2d 838.]
Resolving the novel issue of whether an implied promise of lifetime support was enforceable against the decedent's estate, the Court concluded that it was no different from the enforcement of any other contract made by a decedent during his lifetime. Ibid. Accordingly, the Court determined that because the decedent's duty to fulfill his obligation to the partner was "not discharged by his death[, it] consequently [is to] be discharged by his estate." Id. at 396-97, 808 A.2d 838. "[I]t is not the promisor's death that triggers [plaintiff's] entitlement, but rather his failure, during his lifetime, to have made adequate provision for the promisee, an obligation whose fulfillment does not depend solely or exclusively on testamentary disposition." Id. at 397, 808 A.2d 838.
The Court in Roccamonte reached its decision based upon concepts of implied contract, despite the previous reference in Carr to Justice Pashman's concurrence in Kozlowski. It did not adopt the use of quantum meruit (a quasi contract imposed by law without reference to the parties' intent; see, e.g., Kopin v. Orange Prods., Inc., 297 N.J.Super. 353, 366, 688 A.2d 130 (App.Div.), certif. denied, 149 N.J. 409, 694 *197 A.2d 194 (1997)) nor apply equitable concepts of constructive trust used by the Chancery judge in rendering her decision here.
Although the decision in Roccamonte is not cited in either party's appellate brief, we note that Barbara argues that Francine submitted no proof that Robert intended to leave his estate to her rather than to Barbara. She also asserts that Francine's only theory rests upon unjust enrichment. Inferentially, we assume she would also argue that Francine presented no proofs that Robert impliedly promised to provide for Francine during her lifetime.
As previously pointed out, one of the components of Francine's complaint alleged that she would become unjustly impoverished if she did not share in Robert's estate. More importantly, as the surviving partner, after more than forty years of living with Robert as married, Francine asserts that the relationship was "founded on mutual trust, dependency and raised expectations." In our view, such allegations bespeak an implied promise by Robert not to leave Francine impoverished, but rather, to see to it, as best he could, that she survived with adequate provisions during the remainder of her life.
Because such a promise can be reasonably inferred from Robert's and Francine's conduct and actions, when viewed together with the lengthy period of living as husband and wife, we remand the matter to the Chancery Division for a plenary hearing, if necessary, to determine whether Francine can establish an enforceable implied promise as detailed in Roccamonte.
We need not address Barbara's Point II argument, apparently raised for the first time on appeal, that, because Robert and Francine were not legally married, the deed to the real property taken by them as husband and wife cannot confer a survivorship interest as either joint tenants or tenants by the entirety. Francine concedes that the real property, which has been listed for sale, is being treated as held in tenancy in common with one-half belonging to Robert's estate. Consequently, the value of the real property belonging to the estate may be considered as part of any lump sum amount Francine may be entitled to if she successfully prevails in establishing an implied promise from Robert.
The matter is remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.