**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1515-22

XUAN LI,

    Plaintiff-Respondent,

v.

XIAOWEI LIU,

    Defendant-Appellant.

_____

        Submitted February 6, 2024 – Decided April 3, 2024

        Before Judges Haas and Natali.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1022-14.

        Xiaowei Liu, appellant pro se.

        Respondent has not filed a brief.

PER CURIAM

    Defendant appeals from certain provisions in a November 30, 2022 Final

Judgment of Divorce (FJOD), which the Family Part judge entered following a

multi-day trial. Defendant argues the judge erred by: (1) under-calculating the amount of income imputed to plaintiff and thereby ascribing an incorrect figure to the judge's alimony and child support determinations; (2) ordering equitable distribution of the marital home; (3) requiring the parties' retirement accounts distributed pursuant to a Qualified Domestic Relations Order (QDRO); (4) ordering defendant to pay plaintiff $700 per month in alimony for twelve months and $215 per week in child support; (5) designating plaintiff the parent of primary residence for the parties' minor son; and (6) failing to report plaintiff's non-payment of taxes to appropriate state and federal authorities. In addition, defendant argues the judge mistakenly refused to recuse himself due a conflict of interest and failed to distribute funds held in trust by plaintiff's former counsel.

After analyzing the trial transcripts, reviewing the exhibits in the record, and considering defendant's arguments, with respect to issues (1) through (6), we affirm substantially for the reasons stated by the judge in his written decision issued on November 30, 2022, and his supplemental statement of reasons issued on February 10, 2023. We also reject defendant's contentions that the judge erred in failing to recuse himself.

A-1515-22

We are constrained, however, to remand for the judge to address the distribution of funds remaining in the parties' trust account and to clarify if plaintiff's failure to report her income triggered his obligation under Sheridan v. Sheridan, 247 N.J. Super. 552 (Ch. Div. 1990).

I.

The parties were married in 2000 and have one minor child and another in college. In 2014, the parties filed for divorce due to irreconcilable differences. They continued to live in the marital residence, and the court ordered defendant to pay plaintiff pendente lite support, which he has done since 2014. Although initially represented by counsel, the parties represented themselves at the 2022 trial.

Plaintiff filed Case Information Statements (CIS) in 2014, 2015, and 2019, but did not file an updated CIS prior to trial. In each CIS, plaintiff reported she was a homemaker with no income but indicated she received child support and Social Security payments for her child from a previous marriage. In 2016, the last year plaintiff filed a tax return, plaintiff reported $4,219 in taxable income.

The judge noted plaintiff was evasive in her testimony. With respect to her employment, the judge found plaintiff was not forthcoming regarding her alleged ownership interest in several massage parlors and any related income.

3

On this point, plaintiff initially testified she operated a massage parlor in Millburn since 2019, and previously operated a massage parlor in Massachusetts from 2020 to 2022. The monthly rent for those businesses was $2,000 and $1,702, respectively. Plaintiff testified she did not file state or federal taxes for the businesses, pay wages, pay employment taxes, maintain workers' compensation insurance, or provide employees with 1099 forms.

Plaintiff stated the Millburn massage parlor was not registered with the State "because it doesn't even make any money." When asked about each location's average weekly revenue, plaintiff stated she could not provide an exact or approximate figure because "sometimes we can go a day without a client, [and] sometimes on a day we can get four clients."

Plaintiff later testified she operated since-closed massage parlors in East Brunswick, Denville, Madison, and second locations in both Millburn and Massachusetts dating back to 2015, contrary to her previous testimony and representations to the court. The record does not indicate how plaintiff came to operate the businesses, or for how long she operated them. Plaintiff maintained the businesses were not lucrative, but did not provide exact or approximate income or expense figures.

When plaintiff stated the address of a building in which she rented space to operate one of her former massage parlors, the judge asked about "police involvement" in the building and plaintiff stated she hired a woman who had "trouble." The judge then informed the parties of the following:

> An in-law of mine owns that building, and if you had told me this at any time before this, I probably would not have heard this case. But you didn't tell me about that. You said you haven't worked outside the house, except for these last two years. And now you are telling me that you have this massage [parlor] in that building, which I understand was not what the rental was to.
>
> I don't feel that that in any way affects my judgment on the case, but I am disclosing it to both of you today.

A news article from 2017 included in the record before us states an individual was arrested at the massage parlor and charged with promoting prostitution. The following day, the judge again addressed the issue:

> One of [the massage parlors], as I indicated yesterday, and again, just so we are clear, was in a building owned by one of my in-laws. Which has no effect, other than if I had known that, perhaps . . . I would have not sat on the case, but as I indicated yesterday, if either one of you have a problem with that, you may make the appropriate application. I personally feel it does not impact my decision one bit. I have no interest in any of that real estate business, and I don't have any other knowledge, other than what was being told in court through [defendant]. And you know, which otherwise might have been public knowledge at that time. None of which . . . has [plaintiff's] name on it. As far as the

5

articles that [defendant] presented. So, that is my disclosure again, you know, in case anybody has any issue with that, nobody raised any objection, we are going to continue with the case.

The judge also noted, "[i]f I find out that there is illegal activity going on, whether that be [an] illegal massage parlor or tax non[-]reporting, not paying employment taxes . . . I have to report that."

During trial, defendant attempted to establish plaintiff owned real estate in China, but could not identify the property. Defendant also alleged plaintiff had an interest in her deceased father's Chinese company, which plaintiff denied. On this point, the judge stated, "I don't have any proof in front of me that [plaintiff] has received any financial money from her father, or this estate . . . or from anybody else in the family."

Further, defendant confronted plaintiff with a bank statement from 2016 showing $92,879 in deposits. Plaintiff stated approximately $40,000 was from her ex-husband in overdue support, $23,000 was from defendant in support, and also stated she deposited the income from her business into the account.

With respect to childcare, plaintiff stated she cared for parties' teenage son and was responsible for transporting him to school and his various after-school activities. Plaintiff also testified she communicated with their son's school regarding his educational needs and Individualized Education Program (IEP).

6

The trial record reveals the parties deposited money in a trust account at the law firm of Pashman Stein Walder Hayden PC, but the details of the account are not entirely clear. As best we can discern, the trust appears to have been funded in 2013, and used to pay for legal services and a custody evaluation, but it is unclear if it was funded with marital assets or premarital assets of either party. According to a ledger from Pashman Stein, approximately $60,000 remained in the account at the time of trial.

As noted, on November 30, 2022, the judge entered a FJOD and issued an accompanying written statement of reasons. The judge subsequently issued a supplemental statement of reasons on February 10, 2023, in response to defendant's request he address plaintiff's imputed income and the parties' trust account.

In his November 30, 2022 statement of reasons, the judge found both parties made financial contributions to the purchase of the home and continued to live in the home since the filing for divorce in 2014, contrary to prior court orders. As such, in the FJOD, the judge ordered the parties' marital home be sold and for each party to receive their initial investment and thereafter equally divide the net proceeds. The judge also ordered all retirement assets distributed pursuant to a QDRO.

The judge ordered the parties share joint legal custody of their two children and to equally split parenting time of their minor son. The judge also designated plaintiff the parent of primary residence as he found plaintiff was responsible for transporting their son to activities and communicating with his school regarding educational needs.

Addressing child support and alimony, the judge found defendant earned $130,000 annually and stated plaintiff was not forthcoming about her income and refused to file a completed CIS. The judge found plaintiff recently operated two massage parlors and paid approximately $40,000 in rent, and therefore considered plaintiff to be "a manager of a small shop." As such, the judge, "utilizing sources like the Department of Labor website," imputed an annual salary of $52,000 to plaintiff.

The judge noted neither party produced expert testimony with respect to employability or plaintiff's imputed income. Accordingly, considering the parties' income and the factors set forth in N.J.S.A. 2A:34-23(a), the judge ordered defendant pay $215 per week in child support until the parties' eldest child graduates college or turns twenty-three. With respect to alimony, the judge considered the parties' income, the equitable distribution of the home, the limited duration of the marriage, defendant's pendente lite support, and

8

plaintiff's concealment of income, and ordered defendant to pay $700 per month in alimony for twelve months.

As to the parties' trust account, the judge declined to distribute the funds to either party. In his supplemental statement of reasons, the judge stated the parties were previously ordered to deposit funds into the trust account, but noted "the status of the money in that trust is unclear at this time," as some of the funds may have been used for expert expenses and it was unknown if the trust was originally funded with marital or premarital money. As such, the judge ordered Pashman Stein to produce a ledger for evaluation and stated he would thereafter distribute the funds appropriately.

II.

As noted, defendant challenges several potions of the FJOD. Defendant argues the judge erred in ordering various provisions of the FJOD because plaintiff was not forthcoming with respect to her income and financial holdings, as well as her non-payment of taxes, which defendant asserts the judge was obligated to report under Sheridan. Additionally, defendant maintains the judge should have imputed at least $208,000 of income to plaintiff and argues she operated four, rather than two, massage parlors and owns undisclosed financial and real estate assets. Defendant further contends the judge abused his

9

discretion in ordering equitable distribution of the parties' home and distributing their retirement accounts. He maintains the judge failed to consider plaintiff's untruthfulness and secrecy with respect to her income, and did not correctly account for the income and earning capacity of each party and their relevant contributions.

Defendant also argues the judge erred in ordering him to pay alimony and asserts the judge did not consider properly the statutory factors set forth in N.J.S.A. 2A:34-23(b), and similarly maintains plaintiff's refusal to disclose her income should disqualify her from receiving alimony. Further, defendant asserts the judge erred in designating plaintiff the parent of the primary residence and in ordering defendant to pay $215 per week in child support because the judge failed to consider plaintiff's frequent travel, and well as her failure to provide financial information.

Additionally, defendant contends the judge erred in failing to distribute the funds held in trust by plaintiff's former attorneys. Defendant argues the remaining funds in the trust account represent his premarital assets and he is therefore entitled to any distribution. Finally, defendant maintains the judge should have recused himself due to the conflict of interest related to the judge's

brother-in-law owning the building in which plaintiff operated a massage parlor where an individual was arrested.

III.

The scope of our review of the Family Part's order is limited. We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

We owe no deference to the judge's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we will not interfere with "'the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (alteration in original) (quoting Cesare, 154 N.J. at 412). We will reverse the Family Part's

11

decision "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' . . . to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

Applying these principles, we reject all of defendant's arguments, with the exception of the two issues subject to our remand. The judge's November 30, 2022 FJOD reveals nothing "so wide of the mark" that we could reasonably conclude he made a clear mistake.

We are satisfied the judge's factual findings supporting his order that the marital home should be subject to equitable distribution are amply supported by the record. Specifically, after considering the factors detailed in N.J.S.A. 2A:34-23.1, the judge found both parties financially contributed to the purchase of the home and continued to live in the home after filing for divorce while failing to comply with previous court orders to sell the home. Additionally, because equitable distribution considers both monetary and non-monetary contributions, see Carr v. Carr, 120 N.J. 336, 346-47 (1990), we discern no abuse of the judge's discretion in ordering the parties' marital home be subject to equitable division with each party receiving the return of their initial investment and fifty percent of the net proceeds.

We similarly conclude the judge acted within his discretion in imputing $52,000 of income to plaintiff as "the manager of a small shop," as the figure is based on the judge's finding plaintiff recently operated two massage parlors and paid $40,000 of rental payments while concealing her income both from defendant and taxing authorities. Further, the judge acknowledged defendant's belief plaintiff owns property in China and received money from her family, but found "defendant could not identify the property," and therefore did not consider such property or income in his imputation. In light of the paucity of proofs of plaintiff's alleged financial assets, we are satisfied the judge considered the evidence available to him and discern no error in his income imputation.

We are also satisfied judge considered the child support factors enumerated in N.J.S.A. 2A:34-23(a), and his determination is amply supported by factual findings regarding the parties' incomes, actual and imputed, and the needs of their unemancipated children. With respect to the judge designating plaintiff as the parent of primary residence for the parties' minor son, he determined that designation was appropriate because he found plaintiff transported the son to various activities and communicated with his school regarding educational support, which is, again, a finding supported by the record and entitled to our deference.

Additionally, we conclude the judge considered the factors detailed in N.J.S.A. 2A:34-23(b), and acted within his discretion in ordering defendant pay $700 per month in alimony for twelve months as such was based on the limited duration of the marriage, defendant's pendente lite support since 2014, the parties' earning capacity, and the equitable distribution of the home. In sum, the record amply supports the judge's factual findings and, in light of those findings, his legal conclusions are unassailable.

IV.

We now address defendant's argument, raised for the first time on appeal, that the judge should have recused himself due to an alleged conflict of interest. When a party fails to file a motion for recusal in the trial court, we review the issue under the plain error standard. State v. Medina, 349 N.J. Super. 108, 129 (App. Div. 2002). Under that standard, we disregard any such error unless "clearly capable of producing an unjust result." R. 2:10-2.

Judges are to "act at all times in a manner that promotes public confidence." Code of Jud. Conduct r. 2.1. Further, judges "must avoid all impropriety and appearance of impropriety and must expect to be the subject of constant public scrutiny." Code of Jud. Conduct r. 2.1 cmt. 1. As such, "judges

14                                                                    A-1515-22

must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008).

"Any party, on motion made to the judge . . . stating the reasons therefor[e], may seek that judge's disqualification." R. 1:12-2. Additionally, a judge shall recuse themselves sua sponte "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). "'[I]t is not necessary to prove actual prejudice on the part of the court' to establish an appearance of impropriety; an 'objectively reasonable' belief that the proceedings were unfair is sufficient." DeNike, 196 N.J. at 517 (quoting State v. Marshall, 148 N.J. 89, 279, cert. denied, 522 U.S. 850, 118 (1997)). Accordingly, the Supreme Court articulated the following standard: "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" Ibid.

We are satisfied after a conscientious review of the record that a reasonable person, aware of all the facts, would not doubt the judge's impartiality. First, we note the judge himself made the parties aware of the issue regarding the ownership of the building and stated if he had been previously aware, out of an abundance of caution, he may not have heard the matter.

Second, the judge also noted he had no interest in the ownership of the building, nor did he have knowledge of the incident beyond public information and evidence presented during the trial. In sum, despite the judge's initial cautionary comments, we conclude the record is devoid of any evidence to suggest a reasonable person would conclude the judge could not be fair and impartial and find no error in the judge's decision to preside over the matter.

V.

We now turn to the discrete issues to be addressed on remand. The record indicates Pashman Stein retains certain trust funds as evidenced by the ledger produced in accordance with a prior court order. The record does not indicate, however, whether the judge took any further action with respect to the funds in the trust account. As such, on remand, we direct the judge to address the issue related to any funds in the trust account, make necessary factual findings regarding to whom the funds should be distributed and in what amount, and order the funds distributed.

Finally, with respect to the judge's <u>Sheridan</u> obligation, we note in her testimony, plaintiff admitted she earned income which she failed to report to any state or federal taxing authority. If the judge has not already done so, he should consider whether he is obligated to inform the appropriate taxing authorities of

16

plaintiff's apparent failure to comply with her obligation to file timely taxes on any earned income.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1515-22