623 A.2d 1384

JOYCE CARR, PLAINTIFF, v. ARTHUR W. BURGESS, EXECUTOR OF THE ESTATE OF H. THOMAS CARR, BARBARA CARR, MICHAEL T. CARR, KATHLEEN P. CARR, AND TIMOTHY P. CARR, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Family Part
Middlesex County

Decided November 15, 1991.

*John A. Craner* for plaintiff (*Craner, Nelson, Satkin & Scheer,* attorneys).

*Noel S. Tonneman* for defendants (*Wilentz, Goldman & Spitzer* attorneys).

EPSTEIN, P.J.F.P.

This matter was remanded by the New Jersey Supreme Court for this court to determine the appropriate share of the marital estate which should be awarded to the plaintiff. The opinion of the Supreme Court, *Carr v. Carr,* 120 *N.J.* 336, 576 *A.*2d 872 (1990) contains the factual circumstances of this case through August 1987. Briefly, the plaintiff-wife married the defendant-husband in 1966. The defendant left plaintiff in 1983. Plaintiff filed for divorce in July 1984. Defendant died in 1987. He was survived by the plaintiff and by four children of his previous marriage.

The estate was substantial but plaintiff received only the marital home, which was held by the parties as tenants by the entireties, as defendant had disinherited her in his will. Under the dissolution statute, *N.J.S.A.* 2A:34–23, the plaintiff was not entitled to equitable distribution of marital assets because a dissolution of the marriage was never ordered. Under the probate statute, *N.J.S.A.* 3B:8–1, she was not entitled to a surviving spouse's "elective share" because the parties lived separate and apart at the time of defendant's death.

For reasons expressed in the Supreme Court opinion, plaintiff was permitted to amend her pleadings to implead defendant's executor and his estate and to seek a share of the marital assets on the equitable grounds of constructive trust, quasi—contract and unjust enrichment.

Although novel, a determination of plaintiff's interest in the marital assets is not particularly difficult. It involves the examination of the lives of the parties, and their respective financial and other circumstances at the time of their marriage, through and

including the time plaintiff's share of the assets is awarded to her. In many ways this is similar to the investigation and analysis required by the equitable distribution statute and case law.

This case, however, has been complicated by the recent revelation of many claims against the estate which are far in excess of its assets. Whether the plaintiff's share of the parties' assets should be diminished because of these claims is an issue in this case. But, the question of priority of claims, or whether the plaintiff's share of assets are immune from creditors' claims, has become the overriding issue, since regardless of the percentage or share of the estate this court awards to the plaintiff, the award could be meaningless if she were placed in the same position as the other heirs and received her share only after the just debts of the estate were paid. Alternatively, if plaintiff were placed in the same category as the other creditors then her award would be substantially reduced as she would take her proportionate share of the estate based on her award and the amount determined to be due to the other creditors.

All of the creditors' attorneys were notified of this trial and three attorneys appeared on the trial date requesting the right to intervene [1]. The applications to intervene were granted.

The amount to be awarded to the plaintiff, however, was of no consequence to the creditors of the estate if their legal position regarding the higher priority of their claims prevailed. Their interest was identical to that of the attorney for the estate and the heirs. They sought to limit the share awarded to plaintiff in the event her share was "immunized" from the general creditors' claims or given priority over them, or even if she were deemed to be an additional general creditor. The intervenors, therefore,

---

[1] They were Ben Shiriak on behalf of Leon Weinstein and Center Valley Homes; Neal Herstik on behalf of Kimberly Investment Co.; and Robert Elkins, on behalf of Grabowski. Another attorney, Harry Stadler, on behalf of Edison Glen Associates, wrote to the court indicating he was not requesting intervention but reasserting his client's claim against the entire estate.

agreed not to participate in the actual trial but left that to the attorney for the estate and the heirs.

I find the following additional facts based on the stipulations and the evidence adduced at trial on October 16 and 17, 1991.

Plaintiff and Mr. Carr met in 1960. She was a high school graduate with one year of business (really secretarial) school. Mrs. Carr worked for Mr. Carr as a secretary for two years and then worked in secretarial type jobs for the next three (3) or four (4) years. She married Mr. Carr in 1966. At that time Mrs. Carr was about thirty years old and Mr. Carr was forty years old. Mrs. Carr is now fifty five years old and in good health. Prior to 1960 she worked as a secretary in Canada, her native country. When she married Mr. Carr, he advised her to discontinue her employment and she stopped working. During the marriage Mr. and Mrs. Carr lived well. They vacationed in "first class" places both in and out of the country and ate in good restaurants. Mr. Carr owned a sailboat and had membership in the Yacht Club and the Colonia Country Club. Mrs. Carr enjoyed an excellent relationship with Mr. Carr's children and occasionally the couple and the children vacationed together.

Substantial assets were accumulated during the marriage. As of the date of the filing of the complaint those assets included, *inter alia*, real estate, stocks, bonds, and Mr. Carr's civil engineering business. After subtracting the only liability (the mortgage on the marital home in the amount of $11,500.00) and the monies which were premarital funds of Mr. Carr (approximately $121,-500.00) the net assets of the couple were approximately $1,454,-000.00 ($600,000.00 of which was the value of the business which included three pieces of real estate).

There is no testimony regarding the quality of the marriage except Mrs. Carr's testimony that there were the "usual" problems. She was unaware, until after Mr. Carr left her in 1983, that he had been seeing other women for many years prior to his separation from her; although, that appears to have been the case.

During the marriage, Mrs. Carr's contribution to the marriage was what used to be referred to as the traditional wife's role. She cleaned and did house work and most of the food shopping. She entertained their friends and Mr. Carr's business associates. She had no funds prior to the marriage and was supported entirely by Mr. Carr who was entirely responsible for all of the financial matters relating to his business and the parties marriage.

After Mr. Carr left the plaintiff, he continued to pay all the roof expenses and give the plaintiff money but was not as generous as before he left.

The parties never discussed the future but it is clear from their conduct that Mrs. Carr always expected Mr. Carr to provide for her.

After Mr. Carr's death in August 1987, all support for Mrs. Carr stopped; she worked part time and then full time. She was then laid off and collected unemployment; currently she is not working and not collecting. She has relied in part on the largesse of her family but both of her parents have recently passed away and her only asset appears to be the former marital home worth approximately $130,000.00 (as of October 11, 1991), an expected inheritance of approximately $35,000.00, and a car which was purchased with $16,000.00 of borrowed funds.

In determining the appropriate share of the marital estate to be awarded to plaintiff this court is not bound by the equitable distribution statute or the probate statute. While plaintiff's claim is an equitable one, more akin to a claim for equitable distribution than a surviving spouse's elective share, the factual and financial circumstances after the death of the defendant should not be ignored.

As previously indicated the marital assets were $1,575,000.00 in 1984 when the complaint was filed and $121,000.00 of that figure would have been immune, in a dissolution action, from plaintiff's share of equitable distribution.

As of the date of Mr. Carr's death the stipulated value of the assets of the estate, excluding the marital home was about $1,245,-000.00 despite the fact that exhibit J-2 shows the IRS valuation to be almost $2,000,000.00.

As of September/October, 1991, the value of the real estate including the former marital home was $725,000.00. The other assets consisting of various banks accounts, bonds, and notes totalled approximately $850,000.00. The engineering business, without the real property, was sold in 1987 for $87,000.00 of which $48,000.00 is still owed. The only liability, excluding the recent claims against the estate is a mortgage on one piece of real estate property in the amount of $11,282.00. It is also noted that Mr. Carr purchased a condo worth $38,000.00 shortly before his death.

Other than the marital house worth $122,000.00 to 130,000.00 and the cash value of a life insurance policy on her own life worth $1,000.00 to $1,500.00 plaintiff received no other assets. She was not the beneficiary of any life insurance on Mr. Carr's life. Finally, I find that the estate's creditors' claims all arose after the filing of the dissolution complaint and that they all relate to Mr. Carr's business.

■ Considering these factual circumstances and applying equitable standards similar to those which have shaped the case law and statute regarding equitable distribution of assets in a dissolution case, without ignoring the facts that one of the litigants is deceased and that his estate is insolvent, I find that Mrs. Carr was equitably entitled as of the date of Mr. Carr's death to the sum of $425,000.00 in addition to the former marital home and the cash value of her insurance policy. It is intended that this award not generate a taxable event to Mrs. Carr [2].

---

[2] It is noted that very little information was provided during the trial with regard to possible tax consequences. Clearly the sale of some of the marital assets would have generated a taxable event but it seems that tax considerations would not have been a compelling factor in determining equitable distribution; and they are not in my determination today.

The question then becomes whether this award to Mrs. Carr is immune from the creditors of Mr. Carr's estate.

The Supreme Court decision's directive to utilize constructive trust or quasi—contract principles was for the purpose of avoiding unjust enrichment to the heirs of the estate. It did not deal with whether or not plaintiff's share of the estate would be subject to the claims of creditors of the estate. The same logic and equitable principles, however, which protect the plaintiff in the first instance could also apply to the second instance.

If the concept of a constructive trust is to be utilized to secure to plaintiff certain assets which belonged to the defendant, these assets should be immunized from the claim of all unsecured creditors. It can be argued that if the parties had remained living together, neither having filed for divorce, and the defendant had died during coverture, his widow would have received her share of his estate only after the just debts of the estate were paid. It can be argued that immunizing the plaintiff's share of marital assets places her in a better position, financially, than that of decedent's children. But it can also be argued that had there been a final judgment of divorce shortly before defendant's death, plaintiff would have received her full share under the equitable distribution statute at a time when no one was aware of the existence of any debts of, or claims against, Mr. Carr's business and that share, in all likelihood, would have been more than this court has awarded her, because this court has considered financial information which would not have been available as of the adjourned 1987 trial date. And, it is a fact that plaintiff did not obtain her share under the equitable distribution statute only because the trial was adjourned because of defendant's ultimately fatal illness.

The speculation can go on and on with different fact patterns, different legal questions, and different possible results.

---

According to J–2 in evidence the estate tax could be more than $500,000.00. Originally the estimate was $360,000.00. More likely, there will be little or no estate tax because of the enormity of the claims against the estate including that of the plaintiff in this case.

■ It is this court's decision, however, that inasmuch as the award to Mrs. Carr is under the theory of constructive trust and quasi-contract and inasmuch as this trust comes into being as of the death of Mr. Carr, it follows that Mrs. Carr has an equitable lien *nunc pro tunc* to the date of his death which takes priority over any claims asserted against Mr. Carr's estate. This logic is consistent with the cases of *Daeschler v. Daeschler,* 214 *N.J.Super.* 545, 520 *A.*2d 777 (App.Div.1986), and *Freda v. Commercial Trust Co.,* 118 *N.J.* 36, 570 *A.*2d 409 (1990), because Mrs. Carr's interest is created prior to any creditors obtaining a judgment against or levying against any part of Mr. Carr's assets. This court, in essence, determines that certain assets which were wholly or partially held in the name of the defendant (the marital home and $425,000.00) are the property of Mrs. Carr as of the date of Mr. Carr's death and thus are not part of Mr. Carr's estate. They are immune from any subsequent judgment or lien placed on Mr. Carr's assets. The executor of Mr. Carr's estate, therefore, holds his assets subject first to the lien of Mrs. Carr and then to any other general claims against the estate. As of Mr. Carr's death his estate was, in effect, reduced by the assets the court has today determined he was holding in a constructive trust for Mrs. Carr.

The executor of the estate of Mr. Carr is herewith directed to pay to Mrs. Carr the sum of $425,000.00 with statutory interest from October 17, 1991. Mrs. Carr already has title to the marital home by operation of law. To the extent necessary to comply with this order the restraint against the disbursement of estate funds is vacated.

The award of $425,000.00 plus the marital home is inclusive of Mrs. Carr's claim for interest except as previously indicated. No counsel fees are awarded in light of the substantial award to plaintiff and the insolvency of Mr. Carr's estate.