288 N.J. Super. 321 (1995)
672 A.2d 262
HENRY G. GROH, PLAINTIFF,
v.
THERESA P. GROH, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Sussex County.
August 29, 1995.
*323 Peter J. Laemers, Morris, Downing & Sherred, for Plaintiff.
Marianne Espinosa Murphy, Tompkins, McGuire & Wachenfeld, for Defendant.
PARKER, J.S.C.
This matter comes before the court on defendant's motion to dismiss the divorce complaint after plaintiff's death and release plaintiff's pension death benefits to her. Plaintiff's estate objects and seeks to have the court create an exception under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. *324 § 1001, et seq., to equitably distribute plaintiff's death benefits between defendant and the estate.
After considering the arguments, this court holds that ERISA mandates the death benefits be paid to defendant. There is no legal or equitable basis under which any portion of the death benefits can be awarded to plaintiff's estate. The divorce complaint is dismissed.

FACTS
The material facts are undisputed. The deceased plaintiff, Henry Groh, and defendant, Theresa Groh, were married on March 1, 1973. At that time, Henry was 62 years old and Theresa was 45. Each had one child from a prior marriage. Henry retired on September 12, 1977, four years after the parties married.
The parties continued to reside together until March 20, 1993, when Theresa moved to Arizona. Apparently, both parties intended to move to Arizona because they jointly purchased a large home there along with Theresa's daughter, Michelle. Henry never moved from New Jersey, however, and in March 1993, he relinquished his interest in the Arizona home to Theresa and her daughter without consideration.
On August 12, 1993, Theresa filed a complaint for divorce in Arizona, alleging irreconcilable differences. Theresa's daughter, Michelle, is an attorney in Arizona and represented her mother in that action. Henry appeared in the Arizona action to contest jurisdiction. On May 10, 1994, the parties joined in a stipulation of dismissal of the Arizona complaint.
On May 3, 1994, Henry filed a divorce complaint in New Jersey, alleging desertion. On or about September 20, 1994, Henry moved for expedited discovery and an early trial date because of his age and ill health. On November 16, 1994, Henry filed an amended notice of motion seeking to sequester his pension benefits if he should die during the pendency of the divorce. He also *325 sought leave to video tape his own deposition. Henry's request to sequester the pension benefits was denied. The court did, however, set an expedited discovery schedule and granted Henry the right to preserve his testimony by way of video taped deposition. Unfortunately, Henry died on January 8, 1995, prior to the deposition.
On February 3, 1995, Henry's only son, Hank, filed an order to show cause and complaint in the Probate Part seeking to admit a holographic will, with Hank as executor and sole heir. Simultaneously, Hank moved in the Family Part to sequester his father's pension death benefits pending a determination of whether the benefits were a part of the matrimonial estate and subject to equitable distribution. That application was granted.
On April 17, 1995, Theresa filed a petition for removal of the action to federal court. The petition was denied by the Honorable Alfred J. Lechner, U.S.D.J., who found the notice of removal untimely. Groh v. Groh, 889 F. Supp. 166 (D.N.J. 1995). Judge Lechner also noted that the State Court is a court of competent jurisdiction to determine the enforcement of Theresa's right to recover benefits under ERISA. On August 4, 1995, the Honorable Gerald B. Hanifan signed an order issuing letters testamentary to Hank as the executor of Henry's holographic will. On August 7, 1995, Theresa renewed her motion for dismissal of the complaint and release of the pension death benefits to her. The motion was argued on August 18, 1995.

DISCUSSION
The estate contends that the pension death benefits are marital assets for which a constructive trust should be established pursuant to Carr v. Carr, 120 N.J. 336, 576 A.2d 872 (1990), to preserve a portion of the pension death benefits for distribution to the estate. The estate argues that had Henry survived until entry of the judgment, Theresa would be entitled to share only in the portion of the pension earned during the marriage. Since all but four years of the pension was earned prior to the marriage, the *326 estate maintains that Theresa will be unjustly enriched if she receives the entire death benefit.
The estate further argues that Henry clearly demonstrated his intent to change the beneficiary of his pension survivor benefits when he moved to sequester the pension prior to his death. Moreover, the estate claims that Theresa's conduct constitutes a waiver of the death benefits by virtue of her (1) filing the Arizona divorce complaint; (2) appearing in and contesting the New Jersey divorce action; and (3) appearing in and contesting the New Jersey probate action. In addition, the estate contends that the parties' agreement to distribute all other assets, except for the pension, shows their intent to distribute the pension benefits equitably.
Theresa argues that Carr v. Carr does not apply because the constructive trust remedy was intended to benefit a spouse widowed during the pendency of the divorce, not the deceased party's estate. Moreover, Theresa contends that ERISA is clear and compels distribution of the entire pension death benefit to her. Theresa's position is correct. There is no legal or equitable basis by which the estate may invade the pension death benefit.
The parties do not dispute that plaintiff's pension is a qualified plan under ERISA. The estate argues, however, that state law supersedes ERISA because "... when courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that the state domestic relations law is not pre-empted." Savings & Profit Sharing Fund of Sears Employees v. Gago, 717 F.2d 1038, 1041 (7th Cir.1983) as cited in Ablamis v. Roper, 937 F.2d 1450, 1464 (9th Cir.1991), dissenting opinion of Judge Fletcher. Here the conflict between state and federal law has been resolved. Congress expressly provided that ERISA shall supersede any and all state laws insofar as they apply to any employee benefit plan. 29 U.S.C. § 1144(a). Only Qualified Domestic Relations Orders (QDROs) entered pursuant to state law for the distribution of pension benefits are excepted from the pre-emption clause. No QDRO was entered in this case *327 because it never reached final disposition. ERISA clearly supersedes state law involving distribution of Henry's death benefits.
Section 1055 of ERISA provides that survivor benefits will automatically be paid to a surviving spouse upon the death of the pension participant unless the participant and the spouse consent in writing to an alternate beneficiary. The statute states that the automatic payment of death benefits to a surviving spouse:
... may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and... the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.
29 U.S.C. § 1055(c)(2)(A) (emphasis added).
Initially, ERISA was somewhat ambiguous with respect to spousal benefits. The Retirement Equity Act of 1984 (REA) amended the ERISA statute, however, to require that pension plans provide automatic death benefits to surviving spouses. By enacting the 1984 amendment, Congress specifically intended to safeguard the financial security of widows and divorcees and "to enlarge rights of surviving spouses to receive benefits." Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.1986); Heisler v. Jeep Corporation-UAW Retirement Income Plan, 807 F.2d 505, 509 (6th Cir.1986).
The REA specifically afforded protection to widows (and widowers) by requiring pension plans to provide automatic survivor benefits. [Citation omitted]. Once a participant becomes vested under the plan  that is, has earned a nonforfeitable right to any portion of his accrued benefit  his spouse is assured of receiving a survivor's annuity if her husband predeceases her.... The survivor annuity may be waived only if the waiver is in writing and signed by the participant and the participant's spouse. 29 U.S.C. § 1055(c)(1).
Ablamis v. Roper, 937 F.2d 1450, 1453-54 (9th Cir.1991) (emphasis added).
Moreover, ERISA contains a "spendthrift" provision that prohibits assignment or alienation of retirement benefits. 29 U.S.C. § 1056(d). Even during the pendency of a divorce, a plan participant cannot assign or otherwise designate an alternate beneficiary for pension benefits. The only exception to the non-alienation provision is to permit payment of child support and alimony arrears to the children and former spouse of a plan *328 participant. Operating Engineers' Local # 428 Pension Trust Fund v. Zamborsky, 650 F.2d 196, 200 (9th Cir.1981); L.M. v. State Div. of Med. Assist. & Health Serv., 140 N.J. 480, 496-97, 659 A.2d 450 (1995); Miko v. Miko, 283 N.J. Super. 287, 661 A.2d 859 (Ch.Div. 1994). In this case, however, there are no child support or alimony arrears.
In Hurwitz v. Sher, 982 F.2d 778 (2d Cir.1992), an ERISA plan participant died nine months after the marriage. Before marrying, the parties entered a prenuptial agreement whereby each waived and released all interest "with respect to any property, real or personal, tangible or intangible ... now owned or hereafter acquired by the other party, as fully as though the parties had never married...." Id. at 779. The plan participant had designated his son by a prior marriage as the survivor beneficiary under the ERISA plan. The Second Circuit affirmed the district court's finding that the prenuptial agreement was not an effective waiver of the surviving spouse's benefit because it did not satisfy the clear and unambiguous statutory requirements for waiver articulated in 29 U.S.C. § 1055(c). The son argued that the legislative history of ERISA indicated no intent to disinherit the children of previous marriages.
This argument, however, must fail. The Congressional sponsors of this provision did indeed intend to protect long-term homemakers' rights to their spouses' retirement benefits.... [I]t is likely that the Congressional sponsors did not anticipate the situation at issue here, in which two older, wealthy individuals relied on an antenuptial agreement to protect their children's inheritances. However, we cannot say that just because Congress intended to protect spouses who have been longterm partners, it meant to permit the casual disenfranchisement of newlyweds. As no legislative intent can be discerned to exclude such spouses from the clear provisions of the statute, we will not exempt them by fiat.

Id. at 781.
In Lefkowitz v. Arcadia Trading Ben. Pension Plan, 996 F.2d 600 (2nd Cir.1993), the Second Circuit addressed the issue of ERISA survivor benefits in a context similar to the present case. In Lefkowitz, the parties were estranged and a divorce was pending when the husband died. The husband had participated in an ERISA pension and, during the pendency of the divorce, *329 designated his daughter as the survivor beneficiary. Citing Hurwitz, the Second Circuit concluded that, absent a specific and effective waiver, a surviving spouse will automatically receive death benefits under an ERISA pension plan, regardless of plan participant's designation of a third party beneficiary. The Second Circuit pointed to the legislative history of the REA which demonstrated Congressional intent to insure the mandatory application of death benefits to surviving spouses.
The estate's argument that Henry demonstrated his intent to designate the estate as beneficiary by virtue of his pendente lite motion and that Theresa's conduct constituted a waiver of the survivor benefits must fail. In Hurwitz, the wife's written prenuptial waiver of interest in marital property and the husband's designation of his son as beneficiary did not meet the statutory requirements. In Lefkowitz, the deceased husband's designation of his daughter as the survivor beneficiary similarly failed to satisfy the statutory requirements. If such express statements of intent did not effectively waive a spousal interest in survivor benefits, neither Theresa's nor Henry's conduct can be construed as such a waiver.
The estate does not point to any legal or equitable exception under ERISA to support its position. Neither has this court's independent research disclosed any legal or equitable remedy for the estate. In the face of the mandatory language of 29 U.S.C. § 1055(c) and § 1056(d), the survivor benefits must be paid to Theresa.

COUNSEL FEES
Theresa seeks counsel fees pursuant to 29 U.S.C. § 1132(g)(1), which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Theresa argues that the law is so clear and unambiguous that the estate should not have challenged her right to receive the death benefit.
*330 Under the circumstances of this case, however, the court finds that attorney's fees are not appropriate. When defendant first objected to the estate's application for equitable distribution of the death benefits, her former counsel did not brief the issue. This court initially questioned whether a plan participant's inability to designate a non-spouse survivor beneficiary during the pendency of a divorce created a "black hole" situation in which the estate could claim an equitable interest in the pension death benefits. After further research and briefing by the parties, however, this court is satisfied that no equitable remedy can override the clear and unambiguous mandate of 29 U.S.C. § 1055(c) and § 1056(d). Both parties litigated in good faith and, under the circumstances of this case, no fees will be awarded.

DISMISSAL OF THE COMPLAINT
A divorce action may survive the death of a party under certain circumstances. In Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971), where the wife died during pendency of the divorce, the Supreme Court held that her attorney's application for fees survived. In Carr v. Carr, supra, the divorce action survived the husband's death to determine whether the marital estate was subject to a constructive trust for the wife's benefit since equitable distribution can only be effected at final disposition of a divorce action. Rule 4:34-1(b) provides that a successor or representative may be substituted for a deceased party where a claim is not extinguished by the party's death.
Here, virtually all of the marital estate, except the pension, was distributed by the parties prior to Henry's death. This court's ruling on counsel fees disposes of that claim against the estate. The estate argues that a hearing is required to determine whether Theresa will be unjustly enriched as a result of the death benefits being paid to her. That issue, too, has been resolved.
There are no remaining issues to be litigated in the divorce action. The complaint is, therefore, dismissed.

*331 CONCLUSION
The federal ERISA statute clearly pre-empts state law. The mandate that ERISA death benefits be paid to a surviving spouse, absent an effective waiver, compels distribution of the death benefits to defendant. ERISA authorizes no equitable or legal remedy for the estate. Accordingly, the pension death benefits shall be released from escrow to Theresa and the complaint shall be dismissed.
Defendant's counsel shall submit a form of order consistent with this opinion.