964 A.2d 324 (2009)
405 N.J. Super. 278
Hildegard KAY, Plaintiff-Respondent,
v.
George KAY, Defendant.
Bernard Kanefsky, Executor of the Estate of George Kay, Appellant.
No. A-1594-07T3.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 2008.
Decided January 28, 2009.
*326 Samuel Mandel, Moorestown, argued the cause for appellant.
Thomas J. Hurley argued the cause for respondent (Hurley & Laughlin, attorneys; Mr. Hurley, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Defendant George Kay died during the pendency of an action for divorce on plaintiff Hildegard Kay's complaint and his counterclaim. Bernard Kanefsky, as executor of defendant's estate, sought a constructive trust to prevent the unjust enrichment that would allegedly occur if plaintiff and her daughter retained marital property beneficially belonging to defendant. The trial court denied the estate leave to substitute for defendant and file amended pleadings, dismissed the divorce action and stayed its order for three weeks to allow the estate to file "appropriate" pleadings in the General Equity Part.[1]
On appeal, the estate contends that the trial court erred by relying on Kruzdlo v. Kruzdlo, 251 N.J.Super. 70, 73, 596 A.2d 1098 (Ch.Div.1990). In Kruzdlo, the court held that, unlike a surviving spouse, the estate of a decedent spouse "is not entitled to assert equitable claims against the marital estate sounding in constructive trust, resulting trust, quasi-contract or unjust enrichment" in accordance with Carr v. Carr, 120 N.J. 336, 576 A.2d 872 (1990). Plaintiff and the estate view the trial court's order as barring the estate's assertion of such claims in any Part or Division of the Superior Court.
We conclude that the trial court should have accepted the pleadings and considered whether the equities stemming from the facts alleged call for relief from the strict legal effects of defendant's death during the pendency of the divorce action. Carr, supra, 120 N.J. at 351, 576 A.2d 872. To the extent that Kruzdlo provides a contrary rule, we disapprove it.

I
The parties were married in 1973. It was the second marriage for both, and no children were born of this marriage. Plaintiff has one daughter, Marion Jolly, and defendant had two children and four grandchildren.
The Kays separated in March 2005. In May 2005, they sold the marital residence, which was titled in both parties' names although it was defendant's residence during his first marriage. Unable to agree upon a final disposition of the proceeds, each of the Kays took one-quarter and placed the remainder in escrow. They also jointly held a UBS Financial brokerage account, which defendant had placed on hold prior to his death. Between April 29 and July 1, 2005, plaintiff charged $4666 on defendant's credit card for goods, services, cash advances and tax payments.
Plaintiff filed her complaint for divorce in July 2006. Defendant filed his answer and counterclaim in October 2006. Defendant was then eighty-three years of age and retired. Plaintiff, also retired, was seventy years of age and working part-time in a department store. Plaintiff managed *327 the family assets for many years and had accounts and certificates of deposits in her name, her name and Jolly's and Jolly's name alone.
On May 9, 2007, the court entered an order prohibiting dissipation of marital assets and compelling the parties to comply with discovery deadlines. Prior to his death, defendant identified the following assets held in his name and plaintiff's jointly: $81,282.34 in escrow from the sale of the marital home; approximately $87,000 in the UBS brokerage account; and stock in ExxonMobil and Proctor & Gamble with a total value of approximately $11,000. He acknowledged sole possession of assets with a value of approximately $50,000 and estimated that plaintiff had assets with a value greater than $650,000, though he admitted that he could have double-counted some funds when tracing her assets.
Defendant died on August 30, 2007. His will includes specific bequests to his four grandchildren and a nephew and a devise of the remainder of his estate to his brother and executor, Bernard Kanefsky. On September 25, 2007, plaintiff made an unsuccessful attempt to withdraw the remaining proceeds of the sale of the marital residence from the escrow fund. On September 27, 2007, she submitted a stipulation dismissing the divorce action that was not signed by defendant's attorney, and on October 3, 2007, she transferred the UBS account to her name. Defendant's estate did not include sufficient assets to cover his burial expenses and attorney's fees.

II
This State's matrimonial law "embod[ies] a clear and strong public policy with respect to cognizable rights of spouses in marital property." Carr, supra, 120 N.J. at 348, 576 A.2d 872. "These rights arise from the marital relationship in which, presumptively, both parties contribute in varied ways to the creation, acquisition and preservation of their familial property and, thereby secure a protectable interest to share, possess, and enjoy that property." Id. at 348-49, 576 A.2d 872.
When spouses divorce, marital property is distributed equitably between them in accordance with N.J.S.A. 2A:34-23h and N.J.S.A. 2A:34-23.1. But, when one spouse dies during the pendency of an action for divorce, the action is abated and statutory equitable distribution is unavailable. Carr, supra, 120 N.J. at 342, 576 A.2d 872.
Although marital property is not subject to statutory equitable distribution when one spouse dies while an action for divorce is pending, the statutes do "not reflect a legislative intent to extinguish ... property entitlements," and "marital property does not lose its essential and distinctive nature as property arising from the joint contributions of both spouses during the marriage because of the death of one spouse during the pendency of divorce proceedings." Id. at 349-50, 576 A.2d 872. On those grounds, the Supreme Court has held that, "upon a sufficient evidentiary showing," courts should invoke the equitable remedy of constructive trust and principles of quasi-contract "to avoid the unjust enrichment that would occur if the marital property devolving to [a decedent-spouse's estate] included the share beneficially belonging to" the surviving spouse. Id. at 353-54, 576 A.2d 872.
Without question, the facts of this case are different than the facts of Carr. Here, the estate seeks to invoke the court's equitable jurisdiction on the ground that the surviving spouse will be unjustly enriched if she retains all of the assets held jointly with the decedent as well as those she is *328 alleged to have deceptively titled in her own name and her daughter's name.
The equities implicated when the decedent's estate, not the surviving spouse, seeks to prevent unjust enrichment are undoubtedly different. But, the distinctions are not sufficient to warrant an absolute prohibition against an estate's assertion of equitable claims against the marital estate regardless of other relevant facts. Compare Kruzdlo, supra, 251 N.J.Super. at 73, 596 A.2d 1098 (concluding that an estate may not obtain a constructive trust on the marital assets to prevent unjust enrichment of a surviving spouse) with Groh v. Groh, 288 N.J.Super. 321, 325-27, 672 A.2d 262 (Ch.Div.1995) (considering the merits of an equitable claim raised by the estate of a spouse who died while the action for divorce was pending); cf. Castonguay v. Castonguay, 166 N.J.Super. 546, 549, 400 A.2d 130 (App.Div.1979) (dismissing claims presented by intervenors creditors and legal heirs of a decedent spouse who died intestatewho sought to pursue the decedent's right to statutory equitable distribution to collect on debts owed by a spouse who died before entry of a judgment of divorce).
A broad rule barring such equitable claims regardless of the facts is in tension with general principles governing the exercise of a court's inherent equitable jurisdiction. See Carr, supra, 120 N.J. at 351, 576 A.2d 872. The equities that warrant an equitable remedy arise from "facts which call for relief from the strict legal effects of given situations." Ibid. Even prior to Carr, when the facts of a case have required relief from the legal effects of the situation, our courts have addressed inequities demonstrated by the estates of spouses who died during the pendency of divorce actions. See Williams v. Williams, 59 N.J. 229, 232-33, 281 A.2d 273 (1971); Jacobson v. Jacobson, 146 N.J.Super. 491, 370 A.2d 65 (Ch.Div.1976); cf. Berlin v. Berlin, 200 N.J.Super. 275, 491 A.2d 63 (Ch.Div.1984) (upon death following divorce).
Nothing about the nature and purpose of the equitable remedies applied in Carr warrants automatic rejection of claims asserted by the estate of a decedent spouse. "Constructive trusts are invoked to prevent unjust enrichment or fraud." Carr, supra, 120 N.J. at 351, 576 A.2d 872. "When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts [the owner] into a trustee." Ibid. (internal quotations omitted). On the same principles and the presumption that parties "intend[ ] to deal fairly with one another," quasi-contractual obligations are imposed "to prevent unjust enrichment." Id. at 351-52, 576 A.2d 872 (internal quotations omitted). See Sweeney v. Veneziano, 70 N.J.Super. 185, 193, 175 A.2d 241 (App. Div.1961) (holding that a quasi-contract action assigned to decedent's wife survived his death); Restatement of Restitution § 149(2) (1937) (providing that death does not terminate a cause of action for restitution). While Carr does not expressly authorize imposition of a constructive trust in favor of the estate of a decedent spouse to avoid unjust enrichment of the surviving spouse, the implication of Carr's holding, which limits the surviving spouse's recovery to the share of the marital property beneficially belonging to her, is that an estate justly retains marital property beneficially belonging to the decedent spouse. 120 N.J. at 353-54, 576 A.2d 872.
Public policy would be disserved if courts were to automatically foreclose equitable claims concerning marital property presented by the estate of a deceased spouse. In Carr, Justice Handler instructed that "[i]n exercise of their common-law *329 jurisdiction, courts should seek to effectuate sound public policy and mold the law to embody the societal values that are exemplified by such public policy," including legislative expressions of public policy not "directly applicable or binding" in the case. Id. at 350, 576 A.2d 872. A blanket prohibition against equitable claims pressed by the estate would have the inherent potential to disserve public policy by encouraging spouses contemplating divorce to deal unfairly with one another. That policy is reflected in N.J.S.A. 2A:34-23.1i, which requires courts to consider a spouse's dissipation of marital assets when equitably distributing marital property at the time of divorce, and in our cases, Kothari v. Kothari, 255 N.J.Super. 500, 506-10, 605 A.2d 750 (App.Div.1992); Baskinger v. Baskinger, 129 N.J. Eq. 224, 226, 18 A.2d 845 (Ch.1941).
The prospect of an estate continuing a battle over marital property that cannot be completed by a spouse who died while the divorce was pending is unpleasant, but a rule that would preclude an estate from obtaining an equitable remedy in all cases has the potential to encourage spouses to treat each other unfairly prior to and during the divorce proceeding. The facts alleged in this case illustrate the point. Assuming the truth of the estate's allegations, plaintiff systematically diverted marital assets into accounts in her name and that of her daughter with the intent to deprive her husband of his share of that marital property and secure that property for herself and her daughter. Our courts have characterized similar conduct, when performed in contemplation of divorce, as a "dissipation" amounting to a fraud on the marital estate. Kothari, supra, 255 N.J.Super. at 506-10, 605 A.2d 750 (App.Div.1992); Monte v. Monte, 212 N.J.Super. 557, 567-68, 515 A.2d 1233 (App.Div.1986). In contrast, defendant held sole title to a small portion of the assets acquired during the marriage when the action for divorce commenced and, after plaintiff filed her complaint, he attempted to protect his interest by obtaining judicial restraints against dissipation and awaiting equitable distribution.
Again assuming the truth of the estate's allegations, a constructive trust imposed to address the alleged fraud on the marital estate would prevent unjust enrichment. But if the defendant's estate may not seek that relief, the surviving spouse and her daughter may retain nearly all of the marital property without regard to that fraud on the marital estate. By virtue of plaintiff's self-help and defendant's forbearance during the pendency of the divorce action, plaintiff has no need to invoke the Carr remedy to secure her share of the marital property; she stands to receive more than the share beneficially belonging to her. If, however, plaintiff had been the spouse to die during the divorce proceeding, defendant would have been required to invoke the Carr remedy and could receive no more than the share of marital property beneficially belonging to him. No public policy, statutory law or judicial decision supports application of a rule that would yield such inequitable results.
For the foregoing reasons, we hold that when the estate of a spouse who died while an action for divorce is pending presents a claim for equitable relief related to marital property, the court may not refuse to consider the equities arising from the facts of that case solely on the ground that the estate may not assert equitable claims against the marital estate sounding in constructive trust, resulting trust, quasi-contract or unjust enrichment.
We caution that the foregoing discussion of the issues implicated by the estate's claims in this case is not complete. *330 The parties have not addressed, and accordingly we have not considered, the adequacy of legal or other equitable remedies that may be available to the estate if it can establish the facts alleged. As Carr demonstrates, the unavailability of relief under statutory law is relevant to the propriety of the court's exercise of equitable jurisdiction. Carr, supra, 120 N.J. at 342-50, 576 A.2d 872. There are laws that may apply or leave a gap analogous to the one identified in Carr. See, e.g., N.J.S.A. 17:16I-4 to -6 (governing accounts opened after May 28, 1980); see also Lopatkin v. Lopatkin, 236 N.J.Super. 555, 566 A.2d 559 (Ch. Div.1989) (discussing nature of a surviving spouse's interest in the proceeds from the sale of real estate). The parties have yet to develop the relevant facts and legal arguments.
Because the trial court denied the estate leave to file its pleadings without considering the equities arising from the facts alleged and the propriety of affording equitable relief from the legal effects of the situation, we reverse and remand for further proceedings. We leave it to the trial court to determine whether the estate's claims should be addressed in the Family Part of the Chancery Division or transferred to another Part or Division of the Superior Court as the matter proceeds. See R. 5:1-2(a); In re Estate of Roccamonte, 174 N.J. 381, 398-99, 808 A.2d 838 (2002); Conforti v. Guliadis, 128 N.J. 318, 323, 608 A.2d 225 (1992); Dey v. Varone, 333 N.J.Super. 616, 619-20, 756 A.2d 652 (Ch.Div.2000); Carr v. Burgess, 264 N.J.Super. 191, 193-94, 623 A.2d 1384 (Ch. Div.1991), aff'd, o.b., 264 N.J.Super. 10, 623 A.2d 1384 (App.Div.), certif. denied, 134 N.J. 476, 634 A.2d 524 (1993); Lopatkin, supra, 236 N.J.Super. at 557-58, 566 A.2d 559; see also R. 1:13-4; O'Neill v. Vreeland, 6 N.J. 158, 169, 77 A.2d 899 (1951); Belgacem v. Veneziano, 218 N.J.Super. 6, 9, 526 A.2d 1090 (App.Div.1986).
Reversed and remanded to the Family Part.
NOTES
[1] This court granted the estate's motion to substitute as appellant and continued the stay.