**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0322-20

RICHARD GABEY,

     Plaintiff-Respondent,

v.

RUTH GABEY,

     Defendant.

_____

DEBORAH FINCH, as
executrix for the ESTATE
OF RUTH GABEY,

     Proposed Intervenor/Appellant.

_____

Submitted May 4, 2021 – Decided May 20, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1452-19.

Dwyer, Bachman, Newman & Solop, attorneys for appellant[1] (Elliot S. Solop, of counsel and on the briefs; Lauren Conway, on the briefs).

Richard A. Amdur, Jr., attorney for respondent.

PER CURIAM

Richard and Ruth Gabey were married in 1978. There were no children born of their marriage, but they were both previously married and their children from those marriages are now adults. In April 2019, Richard sued Ruth for divorce. There appears to be no dispute that a year prior to commencing the action, Richard moved out of their Manalapan home and into an assisted living facility. Ruth remained in the home, and her adult son moved in to assist her with her daily needs.

It appears that little occurred during the early stages of this matrimonial action. Correspondence between counsel suggested only a few possible equitable distribution issues relating to their jointly-owned marital home and Richard's use of marital funds when he moved to the assisted living facility.

---

[1] The briefs filed by this law firm purport to be filed not only on behalf of the executrix of Ruth Gabey's estate but also on Ruth's behalf. Since there is no dispute that Ruth died in November 2019, the firm, which represented her in this matrimonial action during her lifetime, can no longer represent her. Once dead, a person ceases to be a juridical entity. See Repko v. Our Lady of Lourdes Med. Ctr., Inc., 464 N.J. Super. 570, 575-76 (App. Div. 2020).

The appellate record also includes what appears to be Ruth's September 2019 Last Will and Testament in which she recognized she was "currently married" to Richard but "anticipate[d]" they would be divorced "shortly." In light of that circumstance, she declared in the Will that Richard "is to receive no benefit from my estate." Ruth died a few months after executing this Will. The divorce action was then still pending, and no issue had been resolved.

In December 2019, Richard wrote to Ruth's children to advise that ownership of the Manalapan home "reverted" to him.[2] The following month, the executrix of Ruth's estate moved in the matrimonial court, seeking to be substituted as the real party in interest in Ruth's place. The executrix also sought:

- an accounting from Richard for any furniture or personalty removed from the marital residence;

- restraining Richard and his adult children from removing any furniture or personalty from the marital home;

---

[2] We assume Richard was asserting that the property was owned by him and Ruth as "tenants by the entirety," meaning that "after the death of one, the survivor takes the whole," see Est. of Van Riper v. Dir., Div. of Tax'n, 241 N.J. 115, 119 (2020) (quoting Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 227 (Ch. Div. 2006)), because the law in that instance views the spouses as one person. The record on appeal does not clearly establish the nature of their ownership of the Manalapan home.

- an immediate sale of the former marital residence;

- the appointment of a realtor and a real estate attorney to sell and transfer title to the marital home;

- the imposition of "a constructive trust to avoid unjust enrichment" by Richard "and his eventual estate";

- a discovery schedule; and

- the scheduling of an early-settlement-panel date.

Richard cross-moved for summary judgment dismissing the action in light of Ruth's death or, in the alternative, for leave to withdraw his divorce complaint.

The judge denied the executrix's motion in its entirety and granted Richard's motion to dismiss by order and written opinion issued on April 13, 2020. The executrix moved for reconsideration, and the judge denied that motion on August 19, 2020.

In appealing, the executrix argues that the trial judge abused his discretion by denying reconsideration of those parts of the April 13, 2020 order that: (1) denied the executrix's requests to substitute in Ruth's place as the real party in interest and amend Ruth's responsive pleading; (2) denied the executrix's requests to order the sale of the marital home, to appoint a realtor and real estate attorney, for a constructive trust, and for a discovery schedule for this suit; and

4

(3) granted Richard's motion to terminate this litigation. We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following brief comments.

There is no doubt that divorce proceedings abate with the death of one of the parties. See Carr v. Carr, 120 N.J. 336, 342 (1990); Castonguay v. Castonguay, 166 N.J. Super. 546, 550 (App. Div. 1979); Dunham v. Dunham, 82 N.J. Eq. 395, 399 (Ch. 1913). There are, however, exceptions in "unusual or exceptional" circumstances. Carr, 120 N.J. at 343. For example, because one will not be permitted to profit from a wrong, it has been held that a spouse's estate could pursue equitable distribution by showing that the death was intentionally caused by the other spouse. Jacobson v. Jacobson, 146 N.J. Super. 491, 494-95 (Ch. Div. 1976). We have also held that if "the facts justifying [the divorce judgment] were adjudicated during the lifetime of the parties" to a point that a judgment "could or should have been rendered" before death, the court may enter a judgment equitably distributing the parties' marital property. Olen v. Olen, 124 N.J. Super. 373, 377 (App. Div. 1973); see also Fulton v. Fulton, 204 N.J. Super. 544, 548-49 (Ch. Div. 1985). It may be, as well, that a court may enforce a pendente lite agreement by the parties to sell and divide the proceeds of a marital home even though one of them had died prior to the entry

A-0322-20

of judgment. Cf. Witt v. Witt, 165 N.J. Super. 463, 467 (Ch. Div. 1979) (acknowledging the authority to enforce such an agreement when one of the spouses had disappeared and was presumably deceased). None of these exceptions is applicable here.

But another circumstance was recognized in both Carr and the more recent decision in Kay v. Kay, 200 N.J. 551 (2010), aff'g o.b., 405 N.J. Super. 278 (App. Div. 2009). In Carr, the Court held that a surviving spouse could continue a matrimonial action "for the limited purpose of proving that the deceased spouse had diverted marital assets, because equity demanded that the innocent spouse have a forum through which to recover those assets for equitable distribution." Kay, 200 N.J. at 552 (citing Carr, 120 N.J. at 353-54). And, in Kay, the Court held that the flip side is also true: a deceased spouse's representative could proceed with a claim – asserted prior to death in a pending matrimonial action – that the surviving spouse had diverted marital assets. Id. at 554. The Kay Court held that permitting the continuation of such a claim "would promote fair dealing between spouses by ensuring that marital property justly belonging to the decedent will be retained by the estate for the benefit of the deceased spouse's rightful heirs and by preventing unjust enrichment of the surviving spouse." Id. at 553.

Ruth's executrix argues the exception recognized in Carr and Kay authorizes the equitable distribution of marital property notwithstanding Ruth's death. She is mistaken. In Kay, the Court carefully explained the limits of its holding by describing two circumstances in which further litigation would not be permitted by the deceased spouse's representative. The Court held that an estate: (1) could not pursue a claim that was "merely one for equitable distribution of an agreed-upon universe of marital property," ibid.; and (2) could not "assert a new claim," but would be relegated only to "continu[ing] claims raised before death [that], in fairness, should not be extinguished lightly or prematurely," id. at 554.

In recognizing the limits imposed by Carr and Kay, we must affirm the order that terminated this matrimonial litigation without resolution of any equitable distribution issues. Unlike the established or arguable exceptions to abatement, here there was no agreement to sell or divide marital property and no adjudicated disposition of any property by the trial court before Ruth's death. More importantly, as is clearly demonstrated by the record, Ruth never asserted a claim that Richard wrongfully diverted marital assets. Her attorney may have informally inquired of Richard's attorney about the disposition of funds from a joint account prior to Ruth's death, but Ruth never filed a claim asserting a

7

wrongful diversion of those or any other assets. Indeed, she filed no answer or counterclaim, only an appearance, which gave her a right to be heard "on issues" including equitable distribution issues "incidental to the proceeding." R. 5:4-3.[3] Her general appearance[4] cannot be so broadly interpreted as to incorporate an assertion of a claim for the recoupment of wrongfully diverted marital property. Kay and Carr, as relevant, clearly limit the particular exception from the general rule of abatement to a personal representative's continuation of claims already asserted – a circumstance not present here.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Ruth's appearance undoubtedly authorized her to seek equitable distribution of what Kay referred to as "an agreed-upon universe of marital property," 200 N.J. at 553, but not a specific claim of wrongfully diverted marital property.

[4] The pleading Ruth filed – entitled "appearance" – stated nothing except that she, through her attorney, had "enter[ed] an appearance in the above-entitled cause of action."

8                                                                    A-0322-20